UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
NO. 3:23-CV-00634–MOC–SCR

| | | |
|---|---|---|
| TYIMA JENKINS, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| | ) | |
| NC DEPARTMENT OF | ) | |
| TRANSPORTATION, and WAYNE | ) | |
| GOODWIN, in his official capacity as | ) | |
| Commissioner of the NC Division of | ) | |
| Motor Vehicles, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**THIS MATTER** comes before the Court on Defendants' motion to dismiss (Doc. No. 8),

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff declined to file a

response. This matter is now ripe for disposition.

I.      **BACKGROUND**

The following allegations are taken as true and construed in favor of Plaintiff.[1]

Defendant hired Plaintiff Tyima Jenkins in June 2020. Plaintiff has performed

satisfactorily since. In September 2021, Plaintiff took maternity leave and gave birth to her child.

Plaintiff returned from maternity leave in March 2022. Upon her return, Plaintiff informed her

supervisor, Lt. Landis, that she would need to express (i.e., pump) breast milk for her nursing

child. Lt. Landis—who had indicated that Plaintiff would have space to breastfeed—informed

---

[1] This section recites factual allegations presented in Plaintiff's complaint. See (Doc. No. 1).

1

Plaintiff that she could pump in the office, at home, or in her assigned vehicle.

At first, Plaintiff chose to pump at home. But Plaintiff's job requires fieldwork. That fieldwork often made it impossible for Plaintiff to return home to pump. To accommodate her fieldwork, Plaintiff began pumping in her assigned vehicle. Pumping in the vehicle posed several difficulties. First, the vehicle lacked privacy. Second, pumping in the vehicle was uncomfortable because the air conditioner didn't work. Third, high temperatures in the vehicle (exacerbated by the non-functional air conditioner) made it difficult for Plaintiff to keep pumped milk cool.

In June 2022, Lt. Landis designated the record room as Plaintiff's lactation room.[2] Later that month, Lt. Landis walked into Plaintiff's designated lactation room as Plaintiff was pumping. Landis did so despite a warning sign posted on the door and his personal knowledge that the room was designated as Plaintiff's lactation space. Lt. Landis did not leave until Plaintiff twice stated that she was present and pumping.

A few months later, Plaintiff found her lactation room locked. Nobody with the keys was in the office. Plaintiff decided to pump in a nearby room and placed a "do not enter" sign on the door. Nevertheless, Marco Aureliano entered the room while Plaintiff was pumping. Plaintiff stated that she was pumping three times before he left. That same day, Plaintiff emailed Lt. Landis and Capt. Ratliff requesting more suitable accommodations for pumping. The next day, Lt. Landis and Lt. Troutman designated Lt. Shrader's office as Plaintiff's new lactation room. Lt. Landis advised that nobody was to enter Lt. Schrader's office without supervisor permission.

The day after Mr. Aureliano walked in on Plaintiff, she overheard Capt. Ratliff joke about the incident. Capt. Ratliff stated that Aureliano "looked like a deer in the headlights." This

---

[2] Plaintiff alleges—without record support—that a white woman, Lt. Troutman, was provided with a superior pumping space upon her return from maternity leave.

2

incident embarrassed Plaintiff and made her uncomfortable. In a subsequent incident, coworkers criticized breastfeeding in Plaintiff's presence.

In August 2022, Plaintiff noticed a camera while changing clothes in her lactation room. Embarrassed, Plaintiff rushed to get dressed. She confronted Lt. Troutman about the camera later that day. Lt. Troutman indicated that she was aware of the camera, but that she had covered it with a sheet of paper. Troutman suggested the paper must have fallen off. Knowledge of the camera made Plaintiff uncomfortable. She decreased her use of the room, decreasing in turn the frequency with which she pumped. This caused Plaintiff's breasts to become painfully engorged during the workday. Having been twice walked in on at the office, Plaintiff resorted to pumping in her vehicle or returning home to pump.

By September 2022, Plaintiff's milk supply had significantly diminished due to the decreased frequency with which she could pump during the workday. That meant she could no longer provide breast milk for her child while he was in daycare, thus depriving him of the myriad benefits of breastfeeding. By mid-October, Plaintiff's milk supply dried up entirely.

Plaintiff filed an Equal Employment Opportunity (EEO) complaint against Defendant North Carolina Division of Motor Vehicles (NCDMV) in early November 2022. Later that month, a maintenance employee escorted Plaintiff to a newly designated "mother's room" and attempted to provide her with a key. Plaintiff refused the key because she was no longer nursing. Plaintiff attributes her cessation of nursing to the several invasions of privacy she endured while pumping in the workplace.

In January 2023, the North Carolina Department of Transportation (NCDOT) EEO office determined that Defendant NCDMV failed to follow state and federal mandates by designating a non-private (i.e., camera-equipped) room as Plaintiff's lactation room.

3

Plaintiff now claims that Defendants violated Title VII by discriminating against her on the basis of sex. Plaintiff further contends that Defendants violated the Pregnancy Discrimination Act of 1978 ("PDA"). As a result of Defendants' actions, Plaintiff suffered emotional pain, anguish, humiliation, inconvenience, and "other non-pecuniary losses." (Doc. No. 1 at 8). Plaintiff contends that Defendants' discrimination prevented Plaintiff from providing her child with the benefits of breastfeeding, which are essential to the health and well-being of both mother and child. Plaintiff requests declaratory and injunctive relief, along with compensatory damages and costs and fees.

## II.      STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), the Court must accept as true all factual allegations in the Complaint and draw all reasonable inferences in the light most favorable to the plaintiff. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). However, to survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level," with the complaint having "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). A complaint may survive a motion to dismiss only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Id. at 679 (citations omitted).

## III.     DISCUSSION

Defendant's motion to dismiss describes Plaintiffs' claims as "conclusory." (Doc. No. 9

4

at 2). Defendant maintains that Plaintiff's complaint fails to plead facts supporting a Title VII cause of action (here, intentional discrimination). (Id. at 3). Accordingly, Defendant argues Plaintiff's claim falls afoul of FED. R. CIV. P. 8.

Plaintiff's allegations are hardly conclusory. The complaint bristles with facts that could support a Title VII action for intentional discrimination. Defendant complains that Plaintiff fails to outline the elements of a Title VII claim. But that would be precisely the kind of "threadbare recital[]" disfavored by Ashcroft. Plaintiff alleges facts sufficient that the right to relief eclipses a speculative level. Based on its judicial experience and common sense, the Court infers more than the mere possibility of misconduct.

Defendant further argues that Plaintiff's complaint ought to be dismissed because Plaintiff fails to state a prima facie case of disparate treatment. (Doc. No. 9 at 7). But Defendant's strict application of the McDonnell Douglas factors is inappropriate at the motion to dismiss stage. (Id.) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)). These arguments are better raised on a motion for summary judgment. Indeed, the cases Defendant cites on this point were decided on motions for summary judgment, not motions to dismiss. See Hemphill v. Aramark Corp., No. 12-1584, 2014 U.S. Dist. LEXIS 39809, 2014 WL 1248296, at *19 (D. Md. Mar. 25, 2014), aff'd, 582 Fed. Appx. 151 (4th Cir. 2014); White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004).

Specifically, Defendant contends that Plaintiff fails to plead two elements of a prima facie Title VII claim: differential treatment and adverse employment action. (Doc. No. 9 at 8). According to Defendant, "Plaintiff does not allege facts showing that her lactation accommodations were discriminatory." (Id. at 9). Not so. First, Plaintiff alleges that Lt. Troutman, a white woman, was provided with a superior pumping space upon her return from

5

maternity leave. Second, Defendant's premise that low-quality lactation accommodations cannot constitute gender discrimination is incorrect. The Pregnancy Discrimination Act, under which Plaintiff sues, was a direct response to the Supreme Court's adoption of a similar line of reasoning in the late 1970s. See Geduldig v. Aiello, 417 U.S. 484 (1974); Gen. Elec. Co. v. Gilbert, 429 U.S. 125 (1976). Plaintiff alleges that Defendants discriminated against her based on a medical condition related to pregnancy. The PDA forbids as much.

Defendant has a point that the complaint contains little evidence of adverse employment action. Plaintiff's counsel could have addressed this argument in a response to Defendant's motion to dismiss. Regardless, the Court infers from the facts alleged that Plaintiff's consistent trips home to pump could have caused her to suffer reduced opportunities for promotion, recognized as an adverse employment action by the Fourth Circuit in Boone v. Goldin, 178 F.3d 253, 255 (4th Cir. 1999).

IV.    CONCLUSION

IT IS, THEREFORE, ORDERED that Defendant's Motion to Dismiss, (Doc. No. 8), is DENIED.

Max O. Cogburn Jr.
United States District Judge

6